Carr, J.
The first question is, as to the admission of Wilson’s deposition taken de bene esse. It was contended, 1. that no subpoena having been served on the witness, this was an absolute and peremptory objection to reading the deposition, and disabled the party from going into evidence, to prove that the witness was unable to attend; and if not, 2. that he failed in his proof of the inability of the witness to attend, and therefore could not read the deposition. I consider the first position as contrary both to the reason and the law of the case. In jury trials, the general rule is, that the testimony of witnesses shall be given in viva voce. To *685 compel their attendance, a subpoena issues; but there are many causes, which may render this process ineffectual: the witness may be beyond its reach, or he may be utterly unable to attend; and it would be unjust, that, owing to such accidents, the party should be deprived of his evidence. Therefore, the law has provided, that when a witness, by age, sickness, or otherwise, shall be unable to attend the court, upon affidavit &c. the clerk may, on request of either party award a commission for taking the deposition of such witness de bene esse, to be read as evidence at the trial, in case the witness should be unable to attend. 1 Rev. Code, ch. 131. § 15. p. 519. Here we see the remedy plainly provided : if the witness be unable to attend, the deposition may be read. Of the fact of inability, the court must judge upon the proofs. The court is not confined to any particular kind of proof. How, then, can it be said, that a subpoena must issue, and that without it, no other proof can establish the inability? Is there any special virtue in that process ? If it be served on a man bedridden for years, can he obey ? Or will the service of it furnish proof of his inability, superiour to all other ? So far from it, this court decided, in Minnis v. Echols, 3 Hen. & Munf. 31. that the mere return of a subpoena duly executed, was not sufficient proof of inability. And, surely, if not itself proof of that fact, it cannot be necessary to resort to it, in order to let in that which is proof. It is clear to me, then, that the first objection has no weight. But was there sufficient proof before the court, to justify it in admitting the deposition ? In Collins v. Lowry, 2 Wash. 75. it was decided (and very properly) that hearsay evidence that the deponent has left the country, and has not returned, is not sufficient to authorize the reading his deposition; in Minnis v. Echols, that the service of a subpoena will not do, but it must be proved, that the witness is dead, or if living, unable to attend ; and in Butts v. Blunt, 1 Rand. 255. that depositions ought not to be read in a suit at law, unless it appear that the witness could not attend at the trial. We see, then, both by the *686 statute and the decisions upon it, that to authorize the reading of a deposition, nothing more is necessary than that the witness should be unable to attend; nor is any higher or more cogent proof required to establish this than any other fact. Now, throwing out of view, the hearsay in this case, as to the continuance and increase of the deponent Wilson’s sickness (though I do not mean to say, that, on this incidental question, addressed to the discretion of the court, it could not hear such evidence, and give it the weight, which, in connexion with the other proof, it might think it deserved) I think the facts proved fully sustained the court in considering that Wilson was unable to attend, and permitting the deposition to be read; it being, in my opinion, regularly taken in all respects.
The next point I shall notice is the exception to the opinion of the court, as to the assent of the executor to the legacy of the slaves in question to the plaintiff. It was contended, that the instruction given to the jury on this point, was glaringly incorrect; that under it, the bare permission of the executor to the widow, to take possession of the slave, though but for a day, and by whatever condition qualified, would prove assent, and so vest the legal title, that it could not afterwards be recalled or contradicted. If I understood the opinion thus broadly, I should agree with the appellant’s counsel, that it was incorrect: but I do not so understand it. To judge of it fairly, we must take it in connexion with the context, and according to the subject matter; first the will j then, the proof going to shew assent by delivery under the will; and then the motion to instruct. Thus taken, I think it may be fairly understood, as telling the jury, that the permission to the mother to take possession of the slave, without more, was such an assent as enabled the son at his full age, to sue for the property. Taking it in this extent, was the instruction correct? With respect to what shall constitute the assent of an executor to a legacy, the law has prescribed no specific form: a very slight assent is held sufficient; and it may be either express or implied, abso *687 lute or conditional. He may, not only in direct terms authorize the legatee to take possession, but his assent may be inferred, either from indirect expressions, or particular acts, and such constructive permission will he equally available. His assent may be implied: as, if the executor congratulate the legatee on his legacy; or, if a horse is bequeathed to A. and the executor requests him to dispose of it; or if B. propose to buy the horse of the executor, and he direct him to buy it of A. or if the executor himself purchase the horse of A. or merely offer him money for it; either of those amounts to an assent, by implication, to the legacy. The assent may be absolute or conditional; but if conditional, the condition must be precedent: as where an executor assents to the devise of a term, if the devisee will pay the rent in arrear at the testator’s death ; the condition must be performed, or there is no assent. But assent upon a subsequent condition, as, provided tbe legatee pay the executor a certain sum annually, is void as to the condition; for, though the state of the fund may authorize the executor to withhold the legacy, or to impose a condition precedent to his paying it, yot if he once part with it, he has no right to clog it with futuro stipulations, and thus make the legacy conditional, which the testator gave absolutely. Toller’s law of ex’ors. Book 2. ch. 4. § 2. p. 306-312. and the authorities there cited. It was said, that though he might assent to the particular interest of the mother in the slaves, that would not enure to the son, so as to vest his title. Without stopping to inquire whether the will gives the mother any separate estate in the slaves, and taking it to be so, I answer, that the assent to the particular interest does operate as an assent to the bequest over. Thus, if a term be devised to A. for life, remainder to B. the assent of the executor to the devise to A. shall operate as an assent to the devise over to B. and vest his interest. So, also, if there be a devise of a term to a widow, so long as she continues unmarried, and if she marry, then of a rent payable out of the land; the executor’s assent 10 the devise of the term, is *688 an assent to that of the rent, in case of the devisee’s marriage. Toller, p. 309, 10. Com. Dig. Administration. C. b. 1 Roll’s Abr. 620. Plowd. 545. Lampet’s case, 10 Co. 47. b. Adams v. Price, 3 P. Wms. 11. These authorities seem to me to sustain the instruction on this point completely.
As to the other instructions, I shall content myself with saying, that I see nothing to disapprove in them.
I think the judgement should be affirmed.
Brooke, J.
There are two points in this case, on which I differ from the judge who has preceded me.
I do not think, that the deposition of Wilson taken de bene esse, was admissible evidence, on the proof adduced by the plaintiff, of his incapacity to attend. It is a fact stated in the bill of exceptions, that he had attended at the preceding term, when summoned, I presume, since it is not said that he attended of his own accord. The defendant was entitled to have him examined viva voce, in open.court, where he might be cross examined by counsel, in the presence of the jury; and, in excepting to the reading of his deposition, he put the onus on the plaintiff to shew, that every thing had been done, required by the law to compel his attendance, and that he was unable to-attend. The first thing required by the law was, that a subpoena should have been served on the witness, to fix on him the obligation to attend. Without this, he is not called on to excuse himself for not attending. I admit, that a case may be stated, in which previous and permanent disability to attend would render it superfluous to summon the witness: but that is not the case before the court. To lay a proper foundation for the excuse offered by the plaintiff, for his failing to attend, a subpoena served on him to oblige him to attend, if able, ought not to have been- dispensed with. But what was the evidence of his inability to attend ? It was proved by a witness who resided two miles from him, that the witness had seen him about sixteen days before the trial; that he *689 rode to the witness’s house on horseback, that he was then sick with a bilious fever (not very sick, it must be presumed, or he would not have been on horseback two miles from home); that he was seventy years old ; and that his residence was a hundred miles distant. I put out of the case what the witness had heard, on the authority of Collins v. Lowry, 2 Wash. 75. and also the opinion of the witness, that, if he had attended on this trial, he would never have returned. I know that questions of this sort are addressed to the discretion of the court; but it is to a discretion, that does not listen to the opinions of witnesses, unless they are professional opinions; which was not the case here. Then, the whole of the evidence was, that the deponent was sick sixteen days before the trial, riding on horseback, two miles from his home; that he was about seventy years of age; and that he had attended the court at the preceding term. On what ground it was inferred from these facts, when it did not appear that he was under any legal obligation to attend, by the service of a subpoena on him, that he was unable to attend on this trial, I am at a loss to conjecture. It could not be inferred from the circumstance, that he was sick, but on horseback, two miles from his home sixteen days before, nor from his age, because, if so, in every like case, a party may be deprived of the viva voce testimony of a witness, in the presence of a jury, which, in many cases, is of the utmost importance in the trial of a cause. On this point, then, I think the judgement ought to be reversed.
The other point on which I differ, is, the instruction of the judge to the jury, that, in this action, the statute of limitations never began to run during the minority of the plaintiff &c. Now, on what facts in the bill of exceptions, this instruction was given, I am utterly unable to perceive. It is the settled rule of this court, that if the facts stated in a bill of exceptions be so imperfectly stated, that the court cannot discover how the case ought to be decided, the judgement should be reversed. Barrett & Co. v. Taze *690 well, 1 Call, 215. Beattie v. Tabb’s adm’r, 2 Munf. 254. This instruction implies, that the statute of limitations had-begun to run at some time, but not in the minority of the plaintiff. Though it did not begin to run in his minority, it may have begun to run, in the lifetirqe of his mother, the tenant for life; and if so, was not affected by the minority of the plaintiff; as' it is a settled rule, that if the statute of limitations legally begins to run, there is no incapacity after-wards, that can stop it. The fact stated in the bill of exceptions, that the defendant was in possession of the slaves in question, shortly before the institution of the suit, gives no light on this point; because it does not negative his possession in the lifetime of the tenant for life. The omission to state the facts, on which the instruction was given, brings it within the cases cited. But the instruction assumes a fact which ought to have been left to the jury: the time when the statute began to run, depended on the adverse possession of the defendant, and of those under whom he might claim. To tell the jury, that it did not begin to run in the minority of the plaintiff, was to tell them, that the possession of the defendant did not commence before that period; and there is no evidence stated, on which even the jury could find that fact. If the judge had not assumed it, it could not be inferred from the fact stated, that the defendant was in possession of the slaves, shortly before the institution of the suit. On this point, also, I think the judgement ought to be reversed.
Tucker, P.
I am of opinion, that there is no error in the proceedings of the circuit court.
It was, in the first place, contended, that Wilson’s deposition was improperly admitted at the trial; both because of its intrinsic irregularity, and because a proper foundation was not laid for the introduction of it. These objections appear to me to be groundless.
The deposition was taken on the day, and at the place, fixed by the notice. It was objected, that it does not ap *691 pear to have been taken within the hours specially appointed, and that the notice having intimated that it would not be taken if the day was unfair, the fairness of the day should also have appeared. These objections, it must be admitted, are very nice. They do not seem insurmountable. The caption of the deposition, which must be regarded as the act of the magistrates, certifies that it was taken in pursuance of the notice : and their certificate of this fact is conclusive. Moreover, as to the fairness of the day, that was not necessary to be certified, since the deposition was fixed for the 16th April 1824, when it was taken; and the notice only provided, that if it proved unfair, the deposition would be taken the next day. Had it not been taken till the next day, then, indeed, it must have appeared that the first day was unfair.
It seems to have been supposed, that a deposition taken de bene esse, could not be read, unless the witness had been summoned. I myself thought there had been such a decision : but there has been none such in our courts. My impression had been derived, I am sure, from the two cases of Penn’s lessee v. Ingraham, 2 Wash. C. C. R. 487. and Banert’s lessee v. Day, 3 Id. 243. On examination, however, even those do not seem to consider the subpoena as indispensable. It would have been strange, if such an opinion should have prevailed under our statute, which authorizes the deposition to be read if the witness be unable to attend. Why should that fact be held to be susceptible of proof in no other way but by a subpoena returned executed ? So far from entertaining such an opinion, our courts have expressly decided, that a return of a subpoena duly executed, is not sufficient to establish the witness’s inability to attend; as well indeed they might decide, upon testimony so equivocal. They call, therefore, for extrinsic proof; which, if satisfactory of the fact of inability, brings the case within the statute. Suppose the witness was eighty years of age, palsied and bedridden for years: of what service would the subpoena be ? It surely could not be necessary *692 to fortify the conviction, that the attendance of the witness could not be had. In this case, the witness was seventy years old; his residence a hundred miles distant: sixteen days before the trial, another witness in the cause had seen him. He was then riding out, it is true, two miles from home, but he had, then, a bilious fever (an intermittent, I presume). Afterwards, this witness heard from his neighbours, that he was more unwell; and, in the opinion of the witness on oath, if he had come to court, his age, sickness, and infirmity would have prevented his returning. These facts appear to me to require no comment. The judge fairly concluded, that the witness was unable to attend, and, therefore, admitted the deposition to be read.
The other complaints of the appellant grow out of the instructions given by the court to the jury, at the trial. They have been ingeniously and rigorously criticised; but, I think, they were substantially correct. They arose out of the character of the plaintiff’s title, and the defendant’s possession.
The plaintiff claimed the slaves under his father’s will. By that will, they were specifically bequeathed to him; but the testator declared it to be his desire, that his mother should hold them, until he attained to fall age. He was born in 1794; attained his full age in 1815, in which year also his mother died; and he sued for the slaves in May 1819. As, however, the assent of the executor of his father to his legacy, was essential to complete his legal title, and to enable him to sue, the fact of that assent was a material point in the action brought by him, and was attempted to be sustained by proving that his mother received possession from the executor. Upon the trial, he introduced evidence to establish the facts above succinctly stated, and then moved the court for three instructions.
The first was as to the statute of limitations. It must be understood secundum subjectam materiem. It cannot fairly be construed to refer to any other person than the infant himself; and if so, the instruction was not erroneous; *693 for the statute could not commence running against him, until he attained his full age.
The second instruction was as to the assent of the executor. Whatever doubts have been expressed on the subject of actions at law for money legacies, by legatees against the executor himself, no reasonable doubt can be entertained of the right of the legatee to sue a third person for a specific legacy, when the executor has completed his legal title to it, by assent and delivery of possession. In this case, therefore, the plaintiff, having produced proof going to establish the fact, that the executor had assented to the legacy of the female slave being delivered to his mother, under the will, and that she accordingly took possession, moved the court to instruct the jury, that the legal property in the slave became thereby so vested in the mother, as to entitle him, to sue, although he never had himself the actual possession. It is perfectly clear, quacunque via data, that the assent of the executor, and delivery of the possession of the property to the mother, under the will, enured to complete the plaintiff’s legal title. For, if the possession which the will directed the mother to hold till his maturity, was designed to be in right of her son, then the assent of the executor, to her taking possession under the will, was an express assent to the son’s legacy; and ipso facto invested him with a complete title, if the testator had good title. On the other hand, if the possession bequeathed to the mother was in her own right, then she had an estate in the chattel for years, with remainder to the son forever: and it seems to be well established that an assent of the executor to the first taker’s possession and enjoyment of the legacy, is an assent to the legacy to the remainderman. Toller’s law of ex’ors, book 2. ch. 4. § 2. and the authorities there cited. See also 4 Bac. Abr. Legacies. L. p. 445. Bishop’s ex’or v. Bishop, 2 Leigh, 487. Now, although the instruction moved for, and assented to by the court, was not asked in the most appropriate terms, yet I see nothing in it, of which the defendant can complain. It might have been more ex *694 plicit as to the plaintiff’s rights, but certainly does not carry them too far. It cannot be denied, indeed, that the assent of an executor may be limited or qualified or clogged with conditions, which his own security, or the situation of the estate, may require; and so it might happen that the testator might give a priority between the particular estate and the remainderman, in relation to liability for debts, which might affect such a transaction. But it may well be doubted, whether the legal title of the legatee is not so far complete even by the qualified -assent of the executor, as to be unquestionable, in an action against a third person; and I think it at least clear, that if the defendant had any interest in the annunciation to the jury, of those modifications of the general principle, he ought himself to have applied to the court for a further instruction. It cannot be necessary, surely, when an instruction is asked on a particular point, that the court should deliver an instruction upon the whole law of the subject, in its remotest ramifications.
The third instruction cannot be distorted to mean more, than that where possession is proved on the part of the defendant, before suit brought, the plaintiff’s action cannot be defeated by his parting with that possession, unless he has been divested by due course of law. This is the well established doctrine. Burnley v. Lambert, 1 Wash. 308. I do not understand it to be contested, though the counsel have deemed the language of the instruction liable to criticism, and has drawn from it other inferences, which I deem inadmissible.
I see nothing more in the case that requires comment; and conclude with again expressing my opinion, that this long litigation should be terminated here, by an affirmance of the judgement.
Judgement affirmed.